IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JAMES D. ABNEY,** *et al.*, | * | |
| **Plaintiffs,** | * | |
| v. | * | Case No. 1:23-cv-00027-JRR |
| **FEDERAL CORRECTIONAL INSTITUTION MCDOWELL,** *et al.*, | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This matter comes before the court on Defendants Federal Correctional Institution ("FCI") McDowell, FCI Allenwood Low, FCI Beckley, FCI Bennettsville, FCI Butner Medium I, FCI Edgefield, FCI Forest City Medium, FCI Fort Dix, FCI Herlong, FCI Manchester, FCI McKean, FCI Memphis, FCI Oxford, FCI Petersburg Medium, FCI Ray Brook, FCI Yazoo City, Federal Medical Center Lexington, Metropolitan Detention Center, United States Penitentiary Lee, United States Penitentiary Leavenworth, United States Penitentiary Marion, United States Penitentiary Pollock, United States Penitentiary Terra Haute, Federal Bureau Of Prisons ("BOP"), Colette S. Peters, United States Marshals Service, Ronald L. Davis, Chris Gomez, Melissa Rios, Shannon Phelps, Heriberto Tellez, James Petrucci, Andre Matevousian, and United States Penitentiary Lewisburg's (collectively, "Defendants") Motion for Summary Judgment or, in the Alternative, to Dismiss. (ECF No. 52; the "Motion.") The court has reviewed all submissions and no hearing is necessary. Local Rule 105.6 (D. Md. 2023).

I.   **BACKGROUND**[1]

This action arises out of a carbon monoxide gas ("CO") leak that occurred at FCI McDowell in August 2021. (ECF No. 1 ¶ 71.) Plaintiffs, all of whom were housed at McDowell at the time of the leak, allege they suffered physical harm as a result of CO poisoning and were denied proper related medical care. *Id.* ¶¶ 1-27, 71-86. Specifically, Plaintiffs allege that after their initial exposure, they "exhibited obvious signs of acute CO poisoning including, but not limited to, headache, nausea, vomiting, dizziness, malaise, fatigue, muscle aches, slowed mentation, confusion, incontinence and loss of consciousness." *Id.* ¶ 77. Since the initial exposure, Plaintiffs have received "minimal" medical treatment and have never been "properly medically evaluated." (ECF No. 1 ¶ 86.)

Plaintiffs allege that because of the harmful and lasting effects of CO poisoning, Dr. Lindell K. Weaver[2] recommends the following:

> A medical evaluation of an individual poisoned with carbon monoxide requires a multi-disciplinary approach, including the following:
>
> **Vestibular testing**
> **Speech**
> **Auditory**
> **Psychiatry**
> **Cardiac**
> **Lung function**
> **Neuropsychiatry**
> **Neurology**
> **Neuro-optometry**
> **Electroencephalogram (EEG)**
> **Visual Evoked Potential/Response (VEP)**
> **Labs**
> **Imaging studies (brain and heart)**

---

[1] For purposes of this memorandum, the court accepts as true the well-pled facts set forth in the Complaint. (ECF No. 1.)
[2] Dr. Weaver has experience in evaluating and treating patients who have been exposed to CO. (ECF No. 1 ¶ 88.)

> Brain imaging of individuals poisoned by carbon monoxide can and often reveals hippocampal atrophy, white matter ischemic lesions, cortical ischemic lesions, pineal cysts, dilated perivascular spaces, abnormal spectroscopy (cell death) and abnormal diffusion tensor imaging (white matter injury).

(ECF No. 1 ¶ 97; the "Diagnostic Protocol.")

On January 5, 2023, 86 individual Plaintiffs filed this action for mandamus relief against Defendants. (ECF No. 1 ¶¶ 1-66.) The prayer for relief seeks: (1) an order for implementation and compliance with the Diagnostic Protocol and related medical care; (2) production by Defendants of the audio and video evidence of the leak to aid in Plaintiffs' diagnosis and care; and (3) access to Plaintiffs by counsel for legal advice and assistance.[3]

On September 14, 2023, Defendants filed the instant Motion. (ECF No. 52.) The Motion is styled as a Motion for Summary Judgment or, in the Alternative, to Dismiss. *Id.* Defendants argue that they are entitled to summary judgment because Plaintiffs have not exhausted their administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e. (ECF No. 52-1 at 1.)[4] In the alternative, Defendants argue that the court should dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) because, even if the court finds Plaintiffs have exhausted their administrative remedies, Plaintiffs fail to state a claim for mandamus relief.[5] *Id.* at 2. Lastly, Defendants move to dismiss the Complaint as to some Plaintiffs pursuant to Federal Rule of Civil Procedure 12(b)(1) on the basis that: (1) they lack standing

---

[3] Defendants assert, and Plaintiffs do not dispute, that Plaintiffs' counsel received a copy of all BOP recordings of the incident and that Plaintiffs' counsel have been able to meet with Plaintiffs. (ECF No. 52-1 at 2, n.2.) Therefore, Plaintiffs' demand for implementation of, and compliance with, the Diagnostic Protocol, and provision of related medical care to Plaintiffs, is at the heart of this action as the potential relief to be afforded.

[4] Throughout this memorandum, citation to document page numbers refer to the page number within the original source, not pagination assigned by the ECF system.

[5] As discussed below, Defendants argue that should the court view the mandamus issue as jurisdictional, the Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1). (ECF No. 52-1 at 20, n. 9.) *See* Section III.B.2, *infra.*

3

because either they were not in the affected housing units exposed to CO; or (2) their claims are moot because they are no longer in BOP custody.   (ECF No. 52-1 at 2-3.)

## II.     LEGAL STANDARDS

**Federal Rule of Civil Procedure 12(b)(1)**

"Rule 12(b)(1) governs motions to dismiss for mootness and for lack of standing, which pertain to subject matter jurisdiction." *Stone v. Trump*, 400 F. Supp. 3d 317, 333 (D. Md. 2019); *see Barnett v. United States*, 193 F. Supp. 3d 515, 518 (D. Md. 2016) ("Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject matter jurisdiction.").  "The plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction."  *Mayor & City Council of Balt. v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019).

Subject matter jurisdiction challenges may proceed in two ways: a facial challenge or a factual challenge. *Id.*  A facial challenge asserts "that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction." *Id.*  A factual challenge asserts "that the jurisdictional allegations of the complaint [are] not true." *Id.* (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)).  "In a facial challenge, 'the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.'" *Trump*, 416 F. Supp. 3d at 479 (quoting *Kerns*, 585 F.3d at 192 (instructing that in a facial challenge to subject matter jurisdiction the plaintiff enjoys "the same procedural protection as . . . under a Rule 12(b)(6) consideration.")).  In a factual challenge, "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.

1991). "The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.*

In the instant case, Defendants' 12(b)(1) arguments raise both facial and factual challenges. As to standing and mootness, the Motion raises a factual challenge to subject matter jurisdiction. (ECF No. 52-1 at 23-25.) Accordingly, in analyzing Defendants' 12(b)(1)-based challenge as to standing and mootness, the court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). As to mandamus relief,[6] Defendants raise a facial challenge, arguing that the allegations in the Complaint are insufficient to establish subject matter jurisdiction. Accordingly, Defendants' 12(b)(1)-based challenge as to mandamus relief will be evaluated in accordance with the procedural protections afforded under Rule 12(b)(6), which is to say that the facts alleged in the Complaint will be taken as true per *Trump* and *Kerns*.

**Federal Rule of Civil Procedure 12(b)(6)**

A motion asserted under Rule 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Accordingly, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain

---

[6] As discussed below, the court views the mandamus issue as jurisdictional. *See* Section III.B.2, *infra.*

that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

**Federal Rule of Civil Procedure 56**

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether

6

sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial.  *Id*. at 249.   Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).  This court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

In undertaking this inquiry, the court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007).  Further, the court "must not weigh evidence or make credibility determinations."  *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage).  Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility.  *Tolan v. Cotton*, 134 S. Ct. 1861, 1866-68 (2014).

## III.   ANALYSIS

### A.   Subject Matter Jurisdiction[7]

#### 1.   Standing and Mootness

Defendants argue that some Plaintiffs lack Article III standing to bring a mandamus claim because they were not exposed to CO at the affected housing facility, and therefore, they have

---

[7] "When a motion under FED. R. CIV. P. 12 is based on more than one ground, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Stone v. Trump*, 400 F. Supp. 3d 317, 333 n.17 (D. Md. 2019) (citations omitted)).

7

suffered no injury-in-fact. (ECF No. 52-1 at 24.) Defendants further argue that some Plaintiffs are no longer in BOP confinement and, therefore, their mandamus claims are moot. (ECF No. 52-1 at 25.) In response, Plaintiffs do not dispute Defendants' standing and mootness arguments; rather, they seek discovery to ensure that Defendants' lists of Plaintiffs that were not exposed to CO and/or are no longer incarcerated are accurate. (ECF No. 56 at 22-23.)

Article III of the Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). "Thus, the threshold question in every federal case is whether the court has authority under Article III to entertain the suit." *Stone v. Trump*, 400 F. Supp. 3d 317, 335 (2019) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "Both mootness and standing go to whether an Article III case or controversy exists in a given case." *Id.* (citing *Friends of the Earth, Inc. v. Laidlaw Env. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000)).

As set forth above, where Defendants raise a factual challenge to subject matter jurisdiction, Plaintiffs bear the burden of proving the facts supporting subject matter jurisdiction by a preponderance of the evidence. *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009). And in determining whether Plaintiffs have done so, the court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768.

The court agrees with the parties that the mandamus claim for any Plaintiff no longer in BOP confinement is moot. *See Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 191 (4th Cir. 2018*)* ("A case becomes moot 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'") (quoting *Simmons v. United Mortg. & Loan Inv.*,

*LLC*, 634 F.3d 754, 763 (4th Cir. 2011)).  The court also agrees that any Plaintiff not exposed to CO at the affected housing facility (during the incident described in the Complaint), lacks Article III standing to bring a mandamus claim.  *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (explaining the first element of standing, injury-in-fact, requires "a plaintiff [to] show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" (quoting *Lujan*, 504 U.S. at 560)).

Here, Defendants attach to the Motion Declarations of Chandra Carothers[8] and Misty Shaw.[9]  (ECF Nos. 52-4 and 52-5.)  The Carothers Declaration and the attached cell assignment history provides that some Plaintiffs were not assigned to one of the four alleged affected ranges.  (ECF No. 52-4 ¶¶ 30-45; Cell Assignment History, Exhibit 3, ECF No. 52-4.)  In addition, the Shaw Declaration provides that four Plaintiffs have been released from BOP custody.  (Shaw Decl. ¶ 115.)  Plaintiffs do not set forth any facts beyond the pleadings to show that a genuine issue of material fact exists as to these Plaintiffs.  Rather, Plaintiffs supply a Rule 56(d) affidavit and urge that "they must be given an opportunity to confirm that Defendants' list of Plaintiffs" is correct.  (ECF No. 56 at 22-23.)

At this stage, the court need not reach the issue as to whether Plaintiffs are entitled to discovery on the issues of standing and mootness because even if all Plaintiffs are currently incarcerated and were exposed to CO at the affected housing facility, Plaintiffs' mandamus claim must be dismissed for the reasons set forth below.

---

[8] Chandra Carothers is a Physician Assistant at FCI McDowell.  (ECF No. 52-4 ¶ 1.)
[9] Misty Shaw is a Paralegal for the Mid-Atlantic Regional Office Consolidated Legal Center.  (ECF No. 52-5 ¶ 1.) The Mid-Atlantic Regional Office Consolidated Legal Center provides legal services for several BOP institutions in the Mid-Atlantic Region.  *Id.*

### 2.   Mandamus Jurisdiction[10]

As an initial matter, Defendants move to dismiss pursuant to Rule 12(b)(6), arguing that Plaintiffs cannot establish entitlement to mandamus relief. (ECF No. 52-1 at 20.) Defendants also assert that if the court views the mandamus issue as jurisdictional, the Complaint should be dismissed pursuant to Rule 12(b)(1). (ECF No. 52-1 at 20 n.9.)

While courts have dismissed mandamus actions under Rule 12(b)(6),[11] the court here will assess Plaintiffs' entitlement to mandamus relief under Rule 12(b)(1). *See* 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in the nature of mandamus . . ."); *Davidson v. Maryland Parole Comm'n*, Civil No. JFM-13-250, 2013 WL 1830097, at *5, n.5 (D. Md. Apr. 30, 2013) ("To establish jurisdiction under 28 U.S.C. § 1361, plaintiff must demonstrate 'the existence of the essential elements supporting a mandamus action' and must show that: (i) he has a clear right to the relief requested; (ii) the defendant has a clear duty to perform that act in question; and (iii) no other adequate remedy is available.") (quoting *In re First Fed. Sav. & Loan Ass'n of Durham*, 860 F.2d 135, 140 (4th Cir. 1988)); *Plato v. Roudebush*, 397 F. Supp. 1295, 1304 (D. Md. 1975) ("Since § 1361 grants jurisdiction to issue writs of mandamus against a federal officer, the existence of jurisdiction depends upon whether the plaintiffs' requested relief is 'in the nature of mandamus' and upon whether the allegations in the complaint would support the issuance of the writ."); *United States v. Moussaoui*, 333 F.3d 509, 516-17 (4th Cir. 2003) ("In order to

---

[10] While Plaintiffs assert that this court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1361 (ECF No. 1 ¶ 67), there is no federal question on the face of the Complaint. *See Columbia Gas Transmission Corp. v. Drain*, 237 F.3d 366, 370 (4th Cir. 2001) (explaining that "[t]he well-pleaded complaint rule requires that federal question jurisdiction not exist unless a federal question appears on the face of a plaintiff's properly pleaded complaint.") Accordingly, it appears the only vehicle for subject matter jurisdiction is 28 U.S.C. § 1361, which provides: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

[11] *See, e.g., Infinity v. Wiggins*, Civil No. RDB-10-1359, 2010 WL 3167925 (D. Md. Aug. 9, 2010); *Lapides v. Nat'l City Bank of Minneapolis*, Civil No. WDQ-04-467, 2004 WL 3524356 (D. Md. Mar. 8, 2004), *aff'd*, 100 F. App'x 910 (4th Cir. 2004).

preserve the extraordinary nature of the mandamus remedy, the Supreme Court has set forth two conditions that must be satisfied as a predicate to mandamus jurisdiction."); *Nat'l Ass'n of Gov't Emps. v. Fed. Labor Relations Authority*, 830 F. Supp. 889, 898 (E.D. Va. 1993) (noting that the failure to show any of three mandamus prerequisites defeats a district court's jurisdiction under 28 U.S.C. § 1361); *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016) (noting that the three requirements for mandamus are "jurisdictional" and "unless all are met, a court must dismiss the case for lack of jurisdiction"); *Dement v. W. Virginia*, No. 2:20-CV-00388, 2020 WL 5502305, at *1 (S.D.W. Va. Sept. 11, 2020) (dismissing civil action involving writ of mandamus for lack of subject matter jurisdiction).

As set forth above, under 28 U.S.C. § 1361, federal district courts have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or one of its agencies to perform a duty owed to the plaintiff. To satisfy the jurisdictional burden, a mandamus-seeking plaintiff must demonstrate "'the existence of the essential elements supporting a mandamus action.'" *In re First Fed. Sav. & Loan Ass'n of Durham*, 860 F.2d at 140; *see, Davidson supra.* (reciting elements). "It is, of course, not necessary for a plaintiff in a section 1361 mandamus action to prove the merits of his case in order to establish jurisdiction." 860 F.2d at 140. At this stage, it is not necessary for Plaintiffs "to prove the merits of [their] case in order to establish jurisdiction . . . . [Rather,] "[i]f the complaint states nonfrivolous allegations of the existence of the essential elements supporting a mandamus action, jurisdiction is established[.]"" *Id.*. Importantly, "[m]andamus is not favored except in extraordinary situations." *Id.* at 138.

### a.  *Clear Right to the Relief Sought and Clear Duty to Perform*

As to the first and second elements, Plaintiffs must allege facts to support a finding that they have a "clear right" to the relief sought and that Defendants have the corollary "clear duty" to do the particular act requested. *In re First Fed. Sav. & Loan Ass'n of Durham*, 860 F.2d 135, 140 (4th Cir. 1988). Defendants argue that Plaintiffs do not have a clear right to the requested Diagnostic Protocol and Defendants do not have a nondiscretionary duty to provide it. (ECF No. 52-1 at 20.) Defendants direct the court's attention to *White v. U.S. Dep't of Just. Fed. Bureau of Prisons FCC Petersburg*, No. 3:17CV441-HEH, 2018 WL 6099735 (E.D. Va. Nov. 21, 2018). In response, Plaintiffs argue that they have "a clear right to relief because they have been exposed to CO over a prolonged period of time while incarcerated at FCI McDowell and Defendants have yet to provide them with proper diagnostic testing and treatment." (ECF No. 56 at 15.) Additionally, Plaintiffs contend that "Defendants have a clear duty to provide Plaintiffs with reasonable and adequate medical care." *Id.*

The court finds *White, supra,* instructive. There, the petitioner sought an order compelling the defendants "to fully upgrade its substandard policy as it related to treating [p]etitioner's Hepatitis C." 2018 WL 6099735, *2. The court found that the petitioner failed to establish the first element (clear right) for mandamus relief::

> With respect to the provision of medical treatment to prisoners, "the government[] [is] obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). However, a prisoner's right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977). Therefore, White is not entitled to the medical care of his choosing. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103-104) (noting that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing).

*Id.* at *3.  The court further found that the petitioner failed to establish the third element for mandamus relief—no other adequate means to attain the relief he desires—because he could have pursued the action as a *Bivens* action.[12]  *Id.* at *3-4.  Accordingly, the *White* court concluded that the petitioner failed to state a claim for mandamus relief and dismissed the action without prejudice.  *Id.* at *4.

The court finds additional guidance from *Buford v. Watts.*, No. 314-CV-1573, 2016 WL 7638499 (M.D. Pa. Apr. 25, 2016), *report and recommendation adopted*, No. 3:14-CV-1573, 2016 WL 7650650 (M.D. Pa. May 13, 2016), *aff'd*, 668 F. App'x 404 (3d Cir. 2016).  There, the plaintiff sought "to rely upon a writ of mandamus to prescribe and dictate the place of his confinement, his medical treatment, his footwear and his proximity to birds while housed in prison."  *Id.* at *2.  The Magistrate Judge (whose report and recommendation the district judge adopted) explained:

> In particular, questions regarding how best to house and medically treat inmates are inherently discretionary in nature. Therefore, when considering mandamus requests made in the context of prison housing and health care decisions, it is evident that few actions taken by governmental officials can be of such a completely non-discretionary nature to justify the entry of a writ of mandamus compelling some particular course of action. Accordingly, such mandamus petitions dictating prison conditions, while frequently submitted by inmates, are rarely embraced by the courts. *See e.g., Hill v. Lappin*, No. 3:10-CV-743, 2010 WL 3398989, at *4 (M.D. Pa. Aug. 25, 2010); *Walton v. Fed. Bureau of Prisons*, 533 F. Supp. 2d 107, 111 (D.D.C. 2008); *Falcon v. U.S. Bureau of Prisons*, 852 F. Supp. 1413, 1415 (S.D. Ill. 1994), *aff'd*, 52 F.3d 137 (7th Cir. 1995).
>
> Indeed, this case aptly illustrates why the mandatory relief of mandamus is ill-suited as a vehicle for compelling specific housing, and healthcare arrangements for federal inmates. In this case federal officials have provided some 200 pages of material to the court relating to efforts to address grievances submitted by Buford;

---

[12] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  A "Bivens action" refers to a civil rights action for damages against a federal officer or government agent for violation of the plaintiff's constitutional rights; essentially, it's the federal analog to a claim under 42 U.S.C. § 1983.

> detailing on-going medical care provided to Buford; and describing an August 2014 effort to locate and remove some pigeons from an attic above one of the prison housing units. (Doc. 57.) These records thoroughly document the on-going attempts by prison staff to address both Buford's medical concerns and his avian aversions, matters which all require the exercise of discretionary judgment by prisons officials. Since "[m]andamus 'is intended to provide a remedy for a plaintiff only if . . . the defendant owes him a clear nondiscretionary duty,'" *Stanley v. Hogsten*, 277 Fed. Appx. at 181(citations omitted) and "[m]andamus is an extraordinary remedy that can only be granted where a legal duty 'is positively commanded and so plainly prescribed as to be free from doubt,'" *Ararat v. District Director, ICE*, 176 Fed. Appx. at 343 (citations omitted), this substantial element of discretion which is an inherent part of prison healthcare and housing decisions compels us to recommend that the Court deny this petition for writ of mandamus since we cannot say on these facts that Buford's "right to the writ is clear and indisputable." *Hinkel v. England*, 349 F.3d at 164.

2016 WL 7638499, at *3. Accordingly, the Magistrate Judge recommended that the court grant Defendants' motion for summary judgment, which it did, following which the Third Circuit affirmed.

Here, Plaintiffs seek an order mandating that Defendants "immediately implement the Diagnostic Protocol [and] provide proper medical care to Plaintiffs based on the results of said Protocol." (ECF No. 1 at 51, *ad damnum*.) Plaintiffs concede they have received medical care for CO exposure, but describe it as "minimal" and "not adequate." (ECF No. 1 ¶¶ 85-86; ECF No. 56 at 19.) While Defendants have a clear constitutional duty to provide Plaintiffs with adequate medical care,[13] "there is no clear non-discretionary duty placed upon [Defendants] to provide prisoners with a specific type of treatment." *Maxwell v. United States*, No. 4:CV-08-1300, 2008 U.S. Dist. LEXIS 81902, at *5 (M.D. Pa. Oct. 14, 2008); *see Moseley v. King*, Civil Action No. 3:05-0797-HFF-JRM, 2006 U.S. Dist. LEXIS 74168, at *19 (D.S.C. Aug. 31, 2006) ("The

---

[13] *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (noting that under the Eighth Amendment "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates'") (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

14

provision of medical care by prison officials is not discretionary, but the type and amount of medical care is discretionary."); *Conn v. Bhatti*, No. 4:CV-07-1718, 2007 U.S. Dist. LEXIS 75263, at *3 (M.D. Pa. Oct. 10, 2007) ("[A]lthough the government does have a constitutional obligation to provide [the petitioner] with adequate medical care, here [the petitioner] has failed to establish that the Respondent owes him a clear non-discretionary duty to provide him with a certain type of medication.").

There is no dispute that Defendants have a non-discretionary duty to provide BOP inmates adequate medical care, but Plaintiffs' demand for implementation of the Diagnostic Protocol is beyond the reach of their legal entitlement. *See Moseley* and *Buford, supra.* Plaintiffs therefore fail to plausibly allege a "clear right" to the Diagnostic Protocol and that Defendants have a nondiscretionary duty to provide such treatment. *In re First Fed. Sav. & Loan Ass'n of Durham*, 860 F.2d 135, 138 (4th Cir. 1988) (citations omitted) (holding that "[m]andamus against a public official will not lie unless the alleged duty to act involves a mandatory or ministerial obligation which is so plainly prescribed as to be free of doubt.").

Plaintiffs' reliance on *De'Lonta v. Johnson* and *Butler v. United States* does not advance their cause because they are inapposite. (ECF No. 56 at 20: "Defendants have a mandatory duty under the Eighth Amendment and 18 U.S.C. § 4042(a) to provide Plaintiffs with adequate medical treatment as a result of their respective exposures to the CO leak"; citing *De'Lonta v. Johnson*, 708 F.3d 520 (4th Cir. 2013), and *Butler v. United States*, No. Civ. 9:08-2760-JMC, 2011 WL 1631013, at *2 (D.S.C. Mar. 24, 2011), *report and recommendation adopted*, No. 9:08-CV-02760-JMC, 2011 WL 1659382 (D.S.C. Apr. 29, 2011), *aff'd sub nom. Butler v. Does*, 456 F. App'x 309 (4th Cir. 2011).) The plaintiffs in *De'Lonta* and *Butler* did not bring claims for mandamus relief; here, Plaintiffs only seek a writ of mandamus.

15

In *De'Lonta,* the plaintiff "filed suit under 42 U.S.C. § 1983 claiming that prison officials denied her adequate medical treatment in violation of the Eighth Amendment." *De'Lonta*, 708 F.3d at 521-22.  In *Butler,* the plaintiff filed a *Bivens* action,[14] which included a negligence claim by way of the Federal Tort Claims Act ("FTCA").  *Butler,* 2011 WL 1631013, at *2.  In *De'Lonta,* therefore, the Fourth Circuit's analysis pertained to whether the plaintiff stated "a plausible Eighth Amendment claim." *De'Lonta,* 708 F.3d at 524.  In *Butler*, the court assessed the plaintiff's FTCA negligence claim for monetary damages.  *Butler*, 2011 WL 1631013, at *3, *8.  These cases reiterate Defendants' "duty to provide appropriate medical care to prisoners" under the Eighth Amendment and for purposes of an FTCA negligence-based claim.  *De'Lonta*, 708 F.3d at 526 (explaining that in the context of the Eighth Amendment deliberate indifference claim, some treatment does not necessarily mean constitutionally adequate treatment); *Butler*, 2011 WL 1631013, at *8 (noting that while the duty to provide appropriate medical care to prisoners "can reach the level of a constitutional claim in so far as appropriate medical care for prisoners is mandated by the Eighth Amendment, for purposes of an FTCA claim this duty is provided by statute; *see* 18 U.S.C. § 4042; which provides that the standard of duty owed is that of 'reasonable care'").  The issues before the *De'Lonta* and *Butler* courts regarding deliberate indifference and negligence are not before this court.  Rather, here, Plaintiffs must plausibly allege a clear right to a particular type of medical care (*i.e.*, the Diagnostic Protocol) and that Defendants have a clear duty to provide it.  Plaintiffs fail to do so.

---

[14] *See* note 12, *supra.*

Even if Plaintiffs plausibly alleged the first two elements supporting a mandamus action, as discussed below, Plaintiffs fail to plausibly allege the third element.

### b. *No Other Adequate Remedy*

As to the third prong, Plaintiffs must plausibly allege there are no other adequate means to attain the relief they seek. Plaintiffs argue that, "due to the nature of the CO poisoning, no other adequate remedy is available." (ECF No. 56 at 21.) In their Reply, Defendants argue that there are other means to address the harm Plaintiffs allegedly suffer from CO exposure. (ECF No. 63 at 11.) The court agrees with Defendants.

Litigation is currently pending in the Southern District of West Virginia related to the CO leak where the plaintiffs have brought *Bivens* and FTCA claims. *See Broadnax et al v. The United States of America, et al.*, Case No. 1:22-cv-00437. That action seeks to hold the defendants liable for the alleged harm the plaintiffs contend they suffered from the same CO leak at issue here. Previously pending before this court as case number 1:23-cv-00216-JRR, yet a third federal action related to the CO leak, was an action brought by 114 individual plaintiffs (five of whom are Plaintiffs in this action). Some, but not all, of the defendants in the 0216 case are Defendants in this action. The plaintiffs in the 0216 case asserted counts for intentional infliction of emotional distress, negligence, and medical monitoring (via the FTCA), as well as two *Bivens* counts. Plaintiffs voluntarily dismissed the 0216 District of Maryland case following amendment of the complaint in the West Virginia action to include the plaintiffs in the 0216 action.

Here, where Plaintiffs concede they receive "some" medical care (ECF No. 1 ¶¶ 85-86; ECF No. 56 at 19), the "action is more properly characterized as challenging the adequacy of the medical care being provided for those conditions." *Maxwell v. United States*, No. CIV 4:CV-08-1300, 2008 WL 4609996, at *2 (M.D. Pa. Oct. 14, 2008). Allegations of inadequate medical care

17

(which is verbatim what Plaintiffs allege) can be remedied through a civil rights action. *See id.* (noting that the petitioner "has other available avenues of relief" and may raise "any assertions of inadequate medical care and requests for injunctive relief via a properly filed civil rights action"); *see Talbert v. Biden*, No. 1:23-CV-260-SPB-RAL, 2024 U.S. Dist. LEXIS 66481, at *12 (W.D. Pa. Apr. 11, 2024) (explaining that the plaintiff's allegations of inadequate medical care "can be litigated and remedied through an action pursuant to 42 U.S.C. § 1983").

Because Plaintiffs fail to plausibly allege the essential elements to support a mandamus action, the Motion will be granted, and the Complaint will be dismissed for lack of jurisdiction. *See* 28 U.S.C. § 1361, *In re First Fed. Sav. & Loan Ass'n of Durham, Davidson, supra.* Accordingly, the court will not address Defendants' remaining arguments.[15]

## V. CONCLUSION

For the reasons set forth herein, Defendants' Motion for Summary Judgment or, in the Alternative, to Dismiss (ECF No. 63), construed as a motion to dismiss, will be granted. A separate Order follows.

May 25, 2024                                            /S/

                                                        _____
                                                        Julie Rebecca Rubin
                                                        United States District Judge

---

[15] Plaintiffs Complaint was also brought against two non-movant Defendants – Residential Reentry Management Detroit and Residential Reentry Management Pittsburgh. (ECF No. 1.) The docket does not reflect that service was effectuated on Defendants Residential Reentry Management Detroit and Residential Reentry Management Pittsburgh. Because the court lacks subject matter jurisdiction, the Complaint will be dismissed in its entirety as against all Defendants. *See Allen v. Burch & Burch-Rates, LLC*, No. CV RDB-07-3337, 2007 WL 9735472, at *1 (D. Md. Dec. 20, 2007) ("Rule 12(b)(1) of the Federal Rules of Civil Procedure requires dismissal of complaints *sua sponte* where subject matter jurisdiction is lacking.").